**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BRYSON FELDER,

                            Plaintiff,

     - v -                                   Civ. No. 9:17-CV-984
                                                 (BKS/DJS)

HAROLD GRAHAM, *Superintendent*,

                            Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

BRYSON FELDER
Plaintiff, *Pro Se*
14-A-5032
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

HON. LETITIA JAMES                     AIMEE COWAN, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendant
Syracuse Regional Office
615 Erie Blvd. West, Suite 102
Syracuse, New York 13204

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Bryson Felder, formerly an inmate in the custody of the Department of Corrections and Community Supervision ("DOCCS")[1], brought this action, pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated while an inmate at Auburn

---

[1] Although Plaintiff has not provided the Court with of his present address , it appears that he was released from custody on October 29, 2018.  http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120 (last visited Jan. 2, 2019).

Correctional Facility. The Complaint concerns events regarding an assault on Plaintiff while in a recreation yard at Auburn Correctional Facility in May 2016. *See generally* Dkt. No. 1, Compl.; Dkt. No. 9 at pp. 5-6. Plaintiff's sole claim remaining following initial review is that the attack was preventable and that Defendant is liable for not having adopted different security procedures. *Id.* Presently pending is Defendant's Motion for Summary Judgment which was filed on August 13, 2018. Dkt. No. 19. Plaintiff's response was initially due on September 17, 2018. *See* Dkt. No. 20. Plaintiff was granted an extension of time to respond to the Motion to November 9, 2018. Dkt. No. 22. Plaintiff failed to respond and was given an additional extension to December 17, 2018. Dkt. No. 23. To date, Plaintiff has filed no response to that Motion. For the reasons that follow, it is recommended that the Motion for Summary Judgment be **granted** or in the alternative that this case be **dismissed** pursuant to Fed. R. Civ. P. 41 based on Plaintiff's failure to prosecute.

## I. BACKGROUND

The facts underlying this action are undisputed.[2] On May 4, 2016, while incarcerated at Auburn Correctional Facility, Plaintiff was attacked by an unidentified inmate in a facility recreation yard. Dkt. No. 19-8, Exhibit D to Declaration of Harold Graham ("Graham Decl., Ex. D"). Prior to this assault, Plaintiff had no reason to believe his safety was in jeopardy.

---

[2] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 7.1(a)(3). Plaintiff has not filed a responsive Rule 7.1 Statement. In deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

Dkt. No. 19-2, Ex. A to Declaration of Aimee Cowan ("Pl.'s Dep."), p. 48. Prior to the incident, Plaintiff had no prior problems related to his safety while at Auburn C.F. and on the day in question he had no reason to think he would be attacked. Pl.'s Dep. at pp. 61 & 63. Prior to the incident Plaintiff had not communicated any concerns about his safety to staff at Auburn C.F. *Id.* at pp. 78-80; Dkt No. 19-4, Declaration of Harold Graham ("Graham Decl."), ¶ 53. Inmates entering the yard on the day in question were subject to random pat frisks, Pl.'s Dep. at p. 32; Graham Decl. at ¶ 18, as well as, the use of a metal detecting wand. Graham Decl. at ¶ 18.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient

to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In this case Plaintiff failed to respond to Defendant's Motion. This failure "does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). "Rather, a court must '(1) determine what material facts, if any, are disputed in the record presented on the defendants' motion, and (2) assure itself that, based on the undisputed material facts in the record, the law indeed warrants judgment for the defendant[].'" *Ogalo v. NYS Thruway Auth.*, 972 F. Supp. 2d 301, 305 (N.D.N.Y. 2013) (quoting *Anderson v. Kooi*, 2011 WL 1315721, at *6 (N.D.N.Y. Jan. 24, 2011), *adopted by* 2011 WL 1256942 (N.D.N.Y. April 1, 2011)).

## B. Analysis of Defendant's Motion

Defendant seeks summary judgment on the ground that Plaintiff has failed to establish sufficient personal involvement under 42 U.S.C. § 1983 and that he is, in any event, entitled to qualified immunity. *See generally* Dkt. No. 19-9, Def.'s Mem. of Law.

### *1. Supervisory Liability*

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the

doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

The Second Circuit has held that the personal involvement of a supervisory official may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[3] Here, none of the

---

[3] The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) upon the categories of supervisory liability under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *See Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g., Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.*, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 Fed.
(continued...)

factors set forth in *Colon* establish a basis on which to hold Defendant liable.

Relevant to the *Colon* analysis, Plaintiff's Complaint is best understood to allege that Graham created a policy or custom which permitted the assault against him to take place. *See* Dkt. No. 9 at p. 11. More specifically, Plaintiff alleges that his attack could have been prevented if all inmates were required to walk through metal detectors before entering the yard and that Defendant implemented a policy to the contrary. Compl. at pp. 7, 13, 17, & 18.[4] DOCCS policy does not require the use of a metal detector when inmates enter a recreation yard. Dkt. No. 19-7, Ex. C to Graham Decl. According to that policy, contained in DOCCS Directive 4910, there are only eight specific circumstances, not including entering the recreation yard, when a metal detector must be used. *Id.* at p. 2. There is discretionary authority to use metal detectors in other contexts. *Id.* The policy defines metal detector to include both a walk-through detector and a hand-held wand. *Id.*

In this case, the record establishes that inmates are randomly pat frisked and/or subjected to use of a metal detecting wand upon entering the recreation yards at Auburn. Graham Decl. at ¶ 18. Plaintiff testified that he did not see staff using a wand or pat frisking anyone on the day in question, but admitted that he did not see all inmates enter the yard that day. Pl.'s Dep. at pp. 32-33. He also testified that he had seen such conduct on other

---

[3](...continued)
Appx. 55 (2d Cir. 2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role. *See*, *e.g.*, *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test.

[4] Citations to pages in the Complaint are to the page numbers generated by the Court's CM/ECF system.

occasions. *Id.* at p. 34.[5]  Given this evidence, there is nothing, apart from Plaintiff's conclusory assertions, to suggest that Defendant created a policy that caused or enabled the assault. The failure to make such a showing bars Plaintiff's claim under the third *Colon* factor. *Gantt v. Ferrara*, 2018 WL 4636991, at *7 (S.D.N.Y. Sept. 27, 2018) (conclusory allegations as to how Defendant created "a policy or custom of ignoring proper procedures" insufficient to withstand motion to dismiss); *Young v. Felicano*, 2018 WL 1015338, at *3 (D. Conn. Feb. 22, 2018) (conclusory allegation that the warden did not implement or enforce policies to keep the plaintiff safe from assault is insufficient to state a claim); *Koehl v. Bernstein*, 2011 WL 2436817, at *19 (S.D.N.Y. June 17, 2011), *report and recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011) ("conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement").[6]

Nor does the record support a claim that Defendant exhibited deliberate indifference towards Plaintiff's safety. *See Curry v. Bradt*, 2016 WL 1258341, at *4 (W.D.N.Y. Mar. 31, 2016) (fifth *Colon* factor considers whether Defendant exhibited deliberate indifference to Plaintiff's rights by failing to act on information that unlawful acts were occurring). In order to establish deliberate indifference to his safety Plaintiff must show that prison officials *actually knew of and disregarded* an excessive risk of harm to the inmate's health and safety.

---

[5] Although it appears to directly conflict with the allegations in the Complaint, he also testified that the walk-through detector was on the day he was attacked. Pl.'s Dep. at p. 32.

[6] Nor for the reasons discussed below regarding deliberate indifference is there any evidence to support a claim that the policy actually in place was unconstitutional.

*Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The record here clearly does not support such a claim. Plaintiff testified repeatedly at his deposition that on the night he was attacked he had no reason to believe any one wanted to harm him, that he had not previously been attacked at Auburn C.F., and that he had not expressed any concern about security at Auburn prior to this incident. Pl.'s Dep. at pp. 48, 61, & 78; *see also* Graham Decl. at ¶ 53 (no records of a complaint by Plaintiff regarding concerns for his safety at Auburn prior to the incident). Nor is there any allegation in the Complaint that there were systemic security concerns at Auburn that would have placed Defendant on notice of the need to adjust security procedures.

The record also does not support a finding that Defendant disregarded any risk of harm to Plaintiff. The record establishes that extensive security protocols were in place at Auburn at the time in question to reduce the risk of inmate attacks. Those measures, discussed in detail in Defendant's Declaration, included routine searches of the physical premises of the facility, including cells and recreation yards, and inmates personally for contraband; limitations on inmate property; and the careful supervision, monitoring, and inventorying of metal within the facility. Graham Decl. at ¶¶ 21-42. While such methods by Defendant's own admission are not a guarantee that inmates will not be able to hide weapons, *id.* at ¶ 43, they belie Plaintiff's claim that Defendant was indifferent to his safety.

In light of these factors, this record does not support any inference that Defendant knew of and disregarded a risk of danger to Plaintiff that would support finding him liable

under the fifth *Colon* factor.

The remaining *Colon* factors are clearly inapplicable here. There is no allegation that Graham was personally present or involved in the assault that took place in May 2016. Graham Decl. at ¶ 45; Compl. Nor is this a case where there is any allegation either that Graham could have, but failed to, remedy Plaintiff's complaints after learning of them or that Graham was grossly negligent in supervising those who committed the complained of actions.

Additionally, Plaintiff's claim that the use of the walk-through detector would have prevented his injury is purely speculative. The person who attacked Plaintiff was never identified and the weapon used was never recovered. Graham Decl., Ex. D. As such, there is no evidence to suggest that the weapon used was metal and would have been detected by a metal detector. Plaintiff admitted that he did not know what was used to cut him and could only speculate that it was not a piece of glass or plastic. Pl.'s Dep. at pp. 55-56. His conclusory claims regarding the cause of his injury are insufficient to withstand summary judgment. *Fisher v. Miller*, 16-CV-1175, slip op. at pp. 15 & 19 (N.D.N.Y. Apr. 30, 2018), *report and recommendation adopted by* 2018 WL 3854000, at *1 (N.D.N.Y. Aug. 14, 2018).

For these reasons, Defendant's Motion should be granted because Plaintiff has failed to establish a basis on which to establish supervisory liability against Graham.

### 2. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct

undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999). Here, even if one were to assume that questions of fact exist regarding the underlying constitutional violation, no reasonable facility superintendent could have known that his actions, conforming to official DOCCS policy and absent any threat of harm to Plaintiff, violated any clearly established constitutional right.

### III. DISMISSAL UNDER FED. R. CIV. P. 41

Defendant's Motion for Summary Judgment was filed on August 13, 2018. That same day the Clerk of the Court provided a notice to Plaintiff regarding the filing of the Motion. Dkt. No. 20. That notice advised Plaintiff that his response was due on or before September 17, 2018 and informed Plaintiff of the consequences that could occur should he fail to respond to the Motion. *Id.* On August 27, 2018, Plaintiff was granted an extension of time to respond to November 9, 2018. Dkt. No. 22. On November 14, 2018, having received no response to the Motion, the Court granted Plaintiff a final extension to December 17, 2018 to respond to the Motion and provided Plaintiff additional warnings of the consequences of his failure to respond. Dkt. No. 23.

While none of the mail sent by the Court has been returned by the Postal Service, it appears that Plaintiff was released from DOCCS custody on October 29, 2018. *See* Note 1, *supra*; Dkt. No. 24 at n. 1. Plaintiff has not provided an updated address to the Court or to counsel for Defendant. Dkt. No. 24.

In this District, all litigants have an ongoing obligation to keep their address information updated with both the Court and adversaries. N.D.N.Y.L.R. 10.1(c)(2) ("**All attorneys of record and *pro se* litigants must immediately notify the Court of any change of address**." (emphasis in original)). A party's failure to provide such information is grounds for dismissal. N.D.N.Y.L.R. 41.2(b). As then-District Judge Pooler has observed:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cnty. Corr. Facility Staff*, 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996) (citations omitted). Indeed, courts in the Northern District of New York have dismissed lawsuits brought by *pro se* plaintiffs for failure to provide a current address. *See Rivera v. Goord*, 1999 WL 33117155 (N.D.N.Y. Sept. 14, 1999); *Fenza v. Conklin*, 177 F.R.D. 126 (N.D.N.Y. 1988); *Morgan v. Dardiz*, 177 F.R.D. 125 (N.D.N.Y. 1998); *Williams v. Faulkner*, 1998 WL 278288 (N.D.N.Y. May 20, 1998).

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its

discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action, or to comply with the procedural rules or orders of the court. FED. R. CIV. P. 41(b); *see Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). The correctness of a dismissal pursuant to Rule 41(b) is determined in light of five factors: (1) whether plaintiff's failure to prosecute or to comply with the court's orders or procedural rules caused a delay of significant duration; (2) whether plaintiff was on notice that failure to prosecute or to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009); *Lucas v. Miles*, 84 F.3d 532, 534-35 (2d Cir. 1996). In making use of this test, "[n]o one factor is dispositive, and ultimately we must review the dismissal in light of the record as a whole." *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

The Court now has no means by which to effectively communicate with Plaintiff given the lack of a current address. Plaintiff's failure to provide an updated address or to oppose a dispositive motion evidences his apparent abandonment of this case and evinces an intent to not prosecute this action. The Court finds that this period of noncompliance with

the requirement that he notify the Clerk's Office and Defendant of his current address weighs in favor of dismissal. Any further warnings to Plaintiff would naturally fall on deaf ears as the Court has no way of contacting him. The Court also finds that Defendant is likely to be prejudiced by further delay in the proceedings, which may well affect witnesses' memories, the ability to locate witnesses, and the preservation of evidence. With regard to the fourth factor, under the circumstances, the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case and weighs in favor of the dismissal of this action.

Lastly, the Court has carefully considered sanctions less drastic than dismissal. Without the ability to communicate with Plaintiff, however, there is no meaningful way to procure his "reappearance" to actively prosecute this action. Moreover, simply waiting for him to comply with his obligations is not likely to be fruitful since he has failed to do so for some months now. As a result, the Court finds that the fifth factor also weighs in favor of dismissal.

In sum, in light of the fact that Plaintiff cannot be located or communicated with at his address of record, and given his failure to comply with his obligation to advise the Court and counsel of any change in his address, I alternatively recommend that this action be dismissed for failure to prosecute.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED** that Defendant's Motion for Summary Judgment (Dkt. No. 19) be **GRANTED**; and it is further

**RECOMMENDED**, in the alternative, that the case be **DISMISSED** under FED. R. CIV. P. 41; and it is further

**RECOMMENDED**, that the Complaint be **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.  The Report-Recommendation shall be served upon Plaintiff at his last known address.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**[7] **WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

---

[7]If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).

1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  January 2, 2019
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge